IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

STATE OF MAINE,

            Plaintiff,

  v.

3M COMPANY, EIDP, INC., *formerly known as* E. I. DU PONT DE NEMOURS AND COMPANY, THE CHEMOURS COMPANY, THE CHEMOURS COMPANY FC, LLC, CORTEVA, INC., DUPONT DE NEMOURS, INC., and DOW INC.,

            Defendants.

Civil Action No. 2:23-cv-00210-JAW

**DEFENDANT 3M COMPANY'S OBJECTION
TO STATE OF MAINE'S MOTION TO REMAND**

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................... 3

I.  3M PROPERLY REMOVED THIS ACTION BASED ON FEDERAL OFFICER JURISDICTION. ............................................................................................................. 3

    A.  This Court Has Federal Officer Jurisdiction Over The State's Claims Because They Relate To MilSpec AFFF. ............................................................. 3

    B.  The State Fails To Show That This Court Lacks Federal Officer Jurisdiction. ......................................................................................................... 7

        1.  3M's Plausible Allegations Were Sufficient For Removal. ........................ 7

        2.  The State's Putative Disclaimer Does Not Preclude Removal. ................. 9

II. 3M PROPERLY REMOVED THIS ACTION BASED ON FEDERAL ENCLAVE JURISDICTION. ............................................................................................ 12

CONCLUSION ............................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AFFF Prods. Liab. Litig.*,
  2019 WL 2807266 (D.S.C. May 24, 2019) ........................................................................4, 13

*In re AFFF Prods. Liab. Litig.*,
  MDL No. 2873, ECF No. 1020 (J.P.M.L. June 7, 2021) .........................................................6

*In re AFFF Prods. Liab. Litig.*,
  No. 18-mn-2873, ECF No. 325 (D.S.C. Oct. 1, 2019) ....................................................6, 7, 10

*Ayo v. 3M Co.*,
  2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) ........................................................................4

*Baker v. Atl. Richfield Co.*,
  962 F.3d 937 (7th Cir. 2020) ........................................................................................9, 11, 12

*Betzner v. Boeing Co.*,
  910 F.3d 1010 (7th Cir. 2018) ..................................................................................................7

*Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*,
  990 F.3d 447 (5th Cir. 2021) ..................................................................................................11

*Cuomo v. Crane Co.*,
  771 F.3d 113 (2d Cir. 2014) .....................................................................................................8

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  574 U.S. 81, 89 (2014) .............................................................................................................7

*Federated Dep't Stores, Inc. v. Moitie*,
  452 U.S. 394 (1981) ...............................................................................................................11

*Jefferson Cty. v. Acker*,
  527 U.S. 423 (1999) .................................................................................................................9

*Jennings v. Bell Helicopter Textron, Inc.*,
  2012 WL 12883239 (S.D. Cal. Oct. 23, 2012) .......................................................................12

*Moore v. Elec. Boat Co.*,
  25 F.4th 30 (1st Cir. 2022) ...................................................................................................3, 7

*Nessel v. Chemguard, Inc.*,
  2021 WL 744683 (W.D. Mich. Jan. 6, 2021) ................................................................ *passim*

*New Hampshire v. 3M Co.*,
    2023 WL 2691376 (D.N.H. Mar. 29, 2023) ....................................................................................2

*O'Connell v. Foster Wheeler Energy Corp.*,
    544 F. Supp. 2d 51 (D. Mass. 2008) ....................................................................................7, 11

*Rhode Island v. Shell Oil Prods. Co.*,
    35 F.4th 44 (1st Cir. 2022)..........................................................................................11, 12, 13

*Rhode Island v. Shell Oil Prods. Co.*,
    979 F.3d 50 (1st Cir. 2020)......................................................................................................10

*Watson v. Philip Morris Co., Inc.*,
    551 U.S. 142 (2007)...................................................................................................................3

*Willingham v. Morgan*,
    395 U.S. 402 (1969).............................................................................................................3, 8

**Statutes**

28 U.S.C. § 1407...............................................................................................................................11

28 U.S.C. § 1442.................................................................................................................1, 2, 3, 11

28 U.S.C. § 1447.................................................................................................................................2

Plaintiff State of Maine ("State") has filed two actions seeking to recover natural resource damages for alleged statewide environmental contamination caused by per- and polyfluoroalkyl substances ("PFAS") and PFAS-containing products manufactured by Defendant 3M Company ("3M") and others. One action purportedly seeks damages for PFAS from aqueous film-forming foams ("AFFF") used for firefighting at military bases and elsewhere. ECF No. 1-3 ("AFFF Complaint"). The Judicial Panel on Multidistrict Litigation ("JPML") transferred that action to the *In re AFFF Products Liability Litigation* MDL after 3M removed it to this Court.[1] *This* action purportedly seeks damages for PFAS from products *other* than AFFF. ECF No. 1-2 ("Complaint"). Although there are many different PFAS chemicals, the Complaint here alleges contamination from some of the same PFAS that are used to make AFFF (including perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA")) and that are at issue in the State's "AFFF" case.

The State could have filed a single lawsuit to recover for alleged PFAS contamination from both AFFF and non-AFFF products—in fact, other states have done just that.[2] But the first page of the State's Motion to Remand ("Mot.") discloses the "simple reason" the State has filed *two* overlapping statewide lawsuits for claimed injuries to the same natural resources from the same chemicals: any claims related to AFFF manufactured according to specifications issued by the U.S. military ("MilSpec AFFF") are subject to federal officer jurisdiction under 28 U.S.C. § 1442(a)(1), so the State filed this putative "non-AFFF" action on the theory that federal courts "lack such jurisdiction" over "non-AFFF" claims and it thus could keep this case out of federal court. Mot. 1.

But the State's attempt to split its claims and plead around federal jurisdiction fails. As

---

[1] *See* MDL Transfer Order, *State of Maine v. 3M Co., et al.*, No. 2:23-cv-00197-JAW, ECF No. 14 (D. Me.).

[2] For instance, California, Wisconsin, and Rhode Island each filed single complaints encompassing PFAS from both AFFF and non-AFFF sources. (*See* Complaint, *People of the State of Cal. v. 3M Co., et al.*, No. 2:23-cv-01531 (D.S.C.), ECF No. 1-1; Complaint, *State of Wis. v. 3M Co., et al.*, No. 2:23-cv-00028 (D.S.C.), ECF No. 1-1; Complaint, *State of R.I. v. 3M Co., et al.*, No. PC-2023-02452 (R.I. Super. Ct.).) The JPML transferred California's and Wisconsin's cases to the MDL and is virtually certain to transfer Rhode Island's case once it has been removed.

1

alleged in 3M's Notice of Removal (ECF No. 1) ("NOR") and in the State's own complaints, PFAS can move through the environment—both from natural processes like transport in groundwater and because people collect, move, and spread PFAS-containing waste—so PFAS from AFFF and non-AFFF sources plausibly have *commingled* at various locations. MilSpec AFFF thus is at issue even in this putative "non-AFFF" case for statewide damages: because PFAS from AFFF and non-AFFF sources commingle, PFAS at some putative "non-AFFF" sites likely derive partly from MilSpec AFFF, and thus, the State's claimed "non-AFFF" damages in fact encompass damages from MilSpec AFFF. At a minimum, this case "relat[es]" to MilSpec AFFF, 28 U.S.C. § 1442(a)(1), because 3M has the right to defend itself by raising the issue of whether alleged "non-AFFF" PFAS contamination may actually derive from MilSpec AFFF, and by asserting its federal government contractor defense as to any claimed damages from MilSpec AFFF. 3M thus properly invoked its right to a federal forum under the federal officer removal statute. 3M also properly removed this case based on federal enclave jurisdiction because PFAS from AFFF and non-AFFF products plausibly were released from military bases in Maine that are federal enclaves.

The State has no satisfactory response to those arguments.[3] The State argues that 3M's Notice of Removal is inadequate because it showed only that the PFAS at issue in this action "plausibly" derives in part from MilSpec AFFF. Mot. 2. But plausible allegations meet the legal standard for establishing federal officer jurisdiction—indeed, at the removal stage, the State can hardly demand the type of evidence that requires lengthy fact and expert discovery. The State also argues that its complaint in this action does not reference MilSpec AFFF, but instead purports to "exclude[]" all AFFF-related damages. Mot. 2. But federal officer jurisdiction is an exception to

---

[3] The State relies on *New Hampshire v. 3M Co.*, 2023 WL 2691376, at *12 (D.N.H. Mar. 29, 2023), in which the court remanded the State of New Hampshire's putative "non-AFFF" lawsuit. That case was wrongly decided. 3M's appeal of that remand order under 28 U.S.C. § 1447(d) is now pending before the First Circuit (docketed as No. 23-1362).

the well-pleaded complaint rule, so 3M is not bound by the State's allegations. The State "cannot prevent" 3M "from raising the production of MilSpec AFFF as a defense or an alternate theory," even when the State has attempted to "surgically divide [its] complaints." *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying State of Michigan's motion to remand its putative "non-MilSpec AFFF" complaint). Accordingly, if the Court addresses the merits of the State's Motion to Remand, the Court should deny the Motion to Remand.[4]

## ARGUMENT

### I. 3M Properly Removed This Action Based On Federal Officer Jurisdiction.

The federal officer removal statute permits private defendants to remove lawsuits "for or relating to" acts "under color of [federal] office." 28 U.S.C. § 1442(a)(1). It is "liberally construed" to favor removal, *Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 147 (2007), and "should not be frustrated by a narrow, grudging interpretation." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

3M's Notice of Removal established each element of federal officer removal: (1) 3M was "acting under a federal officer's authority"; (2) "the charged conduct was carried out 'for or relating to' the asserted official authority"; and (3) 3M "will assert a colorable federal defense to the suit." *Moore v. Elec. Boat Co.*, 25 F.4th 30, 34 (1st Cir. 2022) (quoting 28 U.S.C. § 1442(a)(1)).

#### A. This Court Has Federal Officer Jurisdiction Over The State's Claims Because They Relate To MilSpec AFFF.

3M properly removed this case under the federal officer removal statute because the State's claimed injuries encompass alleged PFAS contamination that was caused at least in part by MilSpec AFFF. 3M's Notice of Removal thus established each of the elements of federal officer jurisdiction: (1) 3M acted under a federal officer in manufacturing MilSpec AFFF pursuant to

---

[4] As stated in 3M's Motion to Stay (ECF No. 31), the Court should defer ruling on the Motion to Remand pending a ruling by the JPML on whether to transfer this case to the *In re AFFF Products Liability Litigation* MDL.

3

specifications issued by the U.S. military that, for decades, required MilSpec AFFF to contain PFAS, *see* NOR ¶¶ 20-22, 34-36; (2) the State's claims relate to MilSpec AFFF because MilSpec AFFF plausibly contributed to the claimed statewide PFAS contamination, *see id.* ¶¶ 24-32, 37-39; and (3) 3M has a colorable federal government contractor defense because 3M's AFFF products conformed to reasonably precise MilSpecs, and the military purchased and used MilSpec AFFF for decades while knowing of the alleged hazards of the PFAS in AFFF, *see id.* ¶¶ 40-47.

The State does not contest that the manufacture and sale of MilSpec AFFF to the military is a basis on which 3M, an AFFF manufacturer, may invoke federal officer removal in cases seeking damages for PFAS contamination from MilSpec AFFF. Federal courts, including the MDL Court, have consistently held that private AFFF manufacturers may remove such cases based on the federal officer removal statute because the manufacturers acted under federal authority in producing MilSpec AFFF, and they have a colorable federal government contractor defense to claims for damages from MilSpec AFFF. *See, e.g.*, *In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2 (D.S.C. May 24, 2019) ("*In re AFFF*"); *Nessel*, 2021 WL 744683, at *3; *Ayo v. 3M Co.*, 2018 WL 4781145, at *7-15 (E.D.N.Y. Sept. 30, 2018); *see also* NOR ¶¶ 17-19, 34-47.[5]

The State also does not deny that the use of MilSpec AFFF at military facilities in Maine plausibly contributed to the alleged PFAS contamination. Far from it, the State has conceded as much by filing a lawsuit against 3M that expressly seeks damages for PFAS contamination caused by AFFF at military facilities. *See, e.g.*, AFFF Complaint ¶ 224 ("[PFAS] found within Defendants' AFFF products . . . *have contaminated and injured the State's groundwater in locations throughout the State*," including at Brunswick Naval Air Station, Portsmouth Naval Shipyard, Loring Air Force Base, and Bangor Air National Guard Base (emphasis added)).

---

[5] The State did not challenge 3M's removal of its "AFFF" case to federal court on this basis.

Moreover, *this* lawsuit alleges statewide contamination of the same natural resources from six of the same PFAS chemicals as the State's "AFFF" lawsuit. *Compare, e.g.*, Complaint ¶ 133 ("Defendants' PFOS, PFOA, PFNA, PFHxS, PFHpA, [and/or] PFDA . . . have been found in and around State natural resources and property, including groundwater, surface waters, soil, sediments, and wildlife *in locations throughout Maine*" (emphasis added)), *with* AFFF Complaint ¶ 209 ("AFFF-related PFOS, PFOA, PFNA, PFHxS, PFHpA, and/or PFDA have been found in and around State natural resources and property, including groundwater, surface waters, soil, sediments, and wildlife *in locations throughout Maine*" (emphasis added)).

Further, 3M's Notice of Removal adequately alleged that PFAS at numerous of the putative "non-AFFF" sites encompassed by this lawsuit likely will be inseparably commingled with PFAS released from MilSpec AFFF use at military sites in Maine. *See* NOR ¶¶ 24-32. As the State itself alleges, PFAS "are mobile in the environment," Complaint ¶ 38; *see id*. ¶¶ 40, 86, 252; AFFF Complaint ¶¶ 57-58, 343, and they "mix with groundwater and migrate great distances," Complaint ¶ 289; *see* AFFF Complaint ¶ 373. Further, the State seeks damages for PFAS that allegedly injured fish, deer, and other wildlife—and animals obviously also move and may thus be exposed to PFAS from different sources at different locations. *See* Complaint ¶¶ 151-153; AFFF Complaint ¶¶ 238-243. In addition, as the State alleges, people move PFAS—including by collecting PFAS-waste from different sources at landfills and wastewater plants, and by spreading PFAS-contaminated wastewater sludge for agricultural purposes. *See* Complaint ¶¶ 47, 54, 134; *see also* NOR ¶ 29 (citing evidence that MilSpec AFFF-waste was shipped off-site from Bangor Air National Guard Base). PFAS from AFFF releases at military bases thus plausibly has moved through the environment to cross-contaminate putative "non-AFFF" sites and non-site-specific natural resources at issue here—which include water supplies to which PFAS from military bases may

have migrated; landfills and wastewater plants to which AFFF waste from military bases may have been shipped; and sludge application areas that may be next to military bases. *See, e.g.*, *id.* ¶ 134.[6]

3M thus properly removed this case because the State's claims encompass PFAS from MilSpec AFFF. Courts, including the MDL Court, have held that AFFF manufacturers properly removed PFAS cases based on plausible MilSpec AFFF sources of PFAS even though plaintiffs purported to disclaim relief related to MilSpec AFFF. *See Nessel*, 2021 WL 744683, at *3; *In re AFFF Prods. Liab. Litig.*, No. 18-mn-2873, ECF No. 325 (D.S.C. Oct. 1, 2019) ("*Ridgewood Water*") (Exhibit 3). In *Nessel*, the court rejected Michigan's effort to split its PFAS claims among multiple cases: a "MilSpec AFFF" case (which was removed and transferred to the MDL without objection) and two putative "non-MilSpec" cases (a "commercial AFFF" and a "non-AFFF" case). In denying Michigan's motion to remand the "commercial AFFF" case, the court explained:

> Plaintiffs argue that the injuries from Commercial AFFF and the injuries from MilSpec AFFF will be distinguishable, but . . . [t]he substantial similarity between Plaintiffs' two complaints belies this argument: Plaintiffs admit that each Defendant was producing and selling MilSpec AFFF . . . , and Plaintiffs [allege] that the chemicals in AFFF get into groundwater and spread contamination throughout the state. The two types of AFFF contain some of the same PFAS compounds . . . . The Court that ultimately hears this case will likely have to engage in a detailed fact-finding process to determine whether the injuries from MilSpec . . . AFFF can be distinguished . . . . It is entirely possible that Plaintiffs' injuries occurred from actions taken while Defendants were acting under color of federal office: namely, MilSpec AFFF.
>
> [W]hile Plaintiffs attempt to surgically divide their complaints . . . , they cannot prevent Defendants from raising the production of MilSpec AFFF as a defense or an alternate theory . . . . Plaintiffs' artful pleading does not obviate the facts on the ground.[7]

---

[6] In fact, the Complaint in this case seeks damages for alleged PFAS contamination of the Kennebunk, Kennebunkport, and Wells Water District ("KK&W Water District"), *see* Complaint ¶¶ 134(a), 141(c), and of the water supply in and around Fairfield, Maine, *see id.* ¶¶ 134(b), 141(a). But the KK&W Water District has itself filed suit in the MDL based on allegations that the PFAS contamination there derived in part from AFFF, including AFFF used at airports. *See* Complaint ¶ 12, *KK&W Water Dist. v. 3M Co.*, No. 2:22-cv-02761, ECF No. 1 (D.S.C.) (Exhibit 1). The Kennebec Water District also has filed suit in the MDL based on allegations of AFFF contamination of its water supply in and around Fairfield, Maine, including from airports. *See* Complaint ¶¶ 2, 12, *Kennebec Water Dist. v. 3M Co.*, No. 2:22-cv-04164, ECF No. 1 (D.S.C.) (Exhibit 2). MilSpec AFFF may be used at airports. *See, e.g.*, NOR ¶ 31 n.17.

[7] 3M later removed the "non-AFFF" case. Michigan's motion to remand was undecided when the JPML transferred that case to the MDL. *See In re AFFF Prods. Liab. Litig.*, MDL No. 2873, ECF No. 1020 (J.P.M.L. June 7, 2021).

*Nessel*, 2021 WL 744683, at *3. Similarly, in *Ridgewood Water*, the plaintiff purported to exclude MilSpec AFFF as the cause of its claimed injuries. *See Ridgewood Water* at 3 (Exhibit 3) (noting plaintiff's argument that "to the extent AFFF is a cause of Ridgewood's injuries, it is limited to commercial AFFF use by *non-federal consumers*," *i.e.*, non-MilSpec AFFF). But the removing defendants had shown that the contamination of the plaintiff's water supply was plausibly attributable in part to PFAS releases from MilSpec AFFF that had been used at a nearby airport. *Id.* at 2. The MDL Court therefore denied the plaintiff's motion to remand, because the defendants "contend[ed] that the AFFF products were manufactured according to MilSpec." *Id*. at 5.

As in *Nessel* and in *Ridgewood Water*, here too 3M is entitled to a federal forum to litigate whether and how alleged contamination at particular locations and contamination of particular natural resources in Maine resulted from MilSpec AFFF for which 3M has a federal defense.

### B.    The State Fails To Show That This Court Lacks Federal Officer Jurisdiction.

Each of the State's arguments against federal officer jurisdiction is fatally flawed.

#### 1.    3M's Plausible Allegations Were Sufficient For Removal.

First, the State applies the wrong legal standard to argue that this Court lacks federal officer jurisdiction because "3M has failed to identify Maine locations where commingling of its AFFF and non-AFFF contamination has *in fact* occurred." Mot. 3. To remove the case, 3M was not required to *prove* that PFAS from MilSpec AFFF and non-AFFF sources have in fact commingled at specific locations in Maine. 3M did have the burden of establishing federal officer jurisdiction, *see Moore*, 25 F.4th at 34, but as the First Circuit has indicated, that "burden is low," *id*. at 36. "[A] defendant's notice of removal need include only . . . plausible allegation[s]." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see Betzner v. Boeing Co.*, 910 F.3d 1010, 1016 (7th Cir. 2018) (holding that, because "allegations supporting . . . § 1442(a) removal [were] plausible on their face," case "belong[ed] in federal court"); *O'Connell v. Foster Wheeler*

7

*Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) ("showing need only be plausible"). "[N]either the parties nor the district court should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue" under § 1442(a), especially because it is "[p]recisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's [federal] defense [that] the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) (quoting *Willingham*, 395 U.S. at 409). In removing this case, 3M met its burden by plausibly alleging that PFAS from MilSpec AFFF has commingled with PFAS from non-AFFF sources in Maine. *See* NOR ¶¶ 24-32. That the State "challenges the factual sufficiency" of 3M's defense only confirms that federal officer removal was proper. *Cuomo*, 771 F.3d at 116.

In fact, 3M's Notice of Removal cited public documents and databases to show that PFAS from MilSpec AFFF at military bases plausibly has commingled with PFAS from non-AFFF sources in Maine, including in the vicinity of Bangor Air National Guard Base, Loring Air Force Base, Brunswick Naval Air Station, and Portsmouth Naval Shipyard. *See* NOR ¶¶ 28-29. Although the State offers various reasons why that evidence supposedly does not *prove* that such commingling occurred, *see* Mot. 3-4, 3M's evidence adequately identified multiple ways in which PFAS from MilSpec AFFF use at military bases *plausibly* migrated off-site to where it cross-contaminated other possible PFAS sites in Maine, *see supra* at 5-6. 3M thus alleged that PFAS from AFFF use at specific military facilities may have migrated off-site through groundwater and surface water pathways, and that AFFF waste from those facilities may have been shipped to off-site landfills or wastewater treatment plants. NOR ¶¶ 28-29. The State cannot justifiably demand that, to remove this case, 3M first had to present additional evidence to prove that PFAS from MilSpec AFFF and non-AFFF sources in fact commingled at specific locations in Maine. That

8

argument has it backwards. Whether and to what extent PFAS from AFFF use at military bases in fact commingled with other PFAS in Maine is a subject for complex fact and expert discovery that should occur in federal court, and for that reason, 3M had a right to remove this case.[8]

### 2. The State's Putative Disclaimer Does Not Preclude Removal.

The State also wrongly argues that this case does not implicate MilSpec AFFF—and this Court lacks federal officer jurisdiction—because the Complaint "expressly disclaims seeking relief for any AFFF-related injuries." Mot. 5 (citing Complaint ¶ 15). The complaint does purport to disclaim damages from AFFF, but 3M nonetheless was entitled to remove this case based on federal officer jurisdiction because MilSpec AFFF plausibly contributed to the claimed damages sought by the State. The law is settled that the "well-pleaded complaint" rule does not apply to federal officer removal, and that suits against federal officers and agents "may be removed despite the nonfederal cast of the complaint." *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999). That is because federal officer removal is based on the existence of a federal *defense*, so allegations supporting removal may be (and typically are) supplied by the *defendant's* averments in the notice of removal. *See id*. 3M is entitled to assert the government contractor defense to the extent that the alleged contamination relates to MilSpec AFFF. 3M thus properly removed this case because the State "cannot dictate what defenses defendants might present." *Nessel*, 2021 WL 744683, at *3; *see also Baker v. Atl. Richfield Co.*, 962 F.3d 937, 945 n.3 (7th Cir. 2020) (holding that federal officer removal was proper even though plaintiffs "purport[ed] to disclaim" that the suit was about products manufactured for the government, because "the parties dispute whether the [plaintiffs']

---

[8] The State's insistence that the Complaint never mentions specific PFAS sites adjacent to Maine's military facilities (*see* Mot. 4-5) proves nothing. The Complaint expressly encompasses alleged contamination "throughout" Maine, including contamination at sites that the State itself has not yet identified, *e.g.*, Complaint ¶¶ 142, 147, 150, 154, and contamination of non-site-specific resources like groundwater and wildlife, *e.g.*, *id.* ¶ 133. Thus, the Complaint does encompass contamination adjacent to Maine's military facilities. In any case, the State alleges that PFAS are mobile, *e.g.*, *id.* ¶ 38, so PFAS from military facilities likely have migrated to PFAS sites that are not adjacent to the facilities.

injuries arise from products [defendant] manufactured for the government," and that was "another example of a difficult causation question that a federal court should be the one to resolve.").

The State distorts the case law to argue that the Court lacks jurisdiction. For instance, *Nessel* and *Ridgewood Water* show that federal officer removal based on plausible MilSpec AFFF sources of PFAS is proper even when the plaintiff disclaims MilSpec AFFF-related damages. *See supra* at 6-7. The State incorrectly contends that those cases are distinguishable because the plaintiffs' complaints there (unlike the Complaint here) explicitly alleged claims for contamination from commercial, *non*-MilSpec AFFF, and the plaintiffs purported to disavow only claims based on *MilSpec* AFFF. *See* Mot. 6-8. But the fact that the complaints included claims for *non*-MilSpec AFFF is beside the point, because the allegations relating to *non*-MilSpec AFFF did not provide a basis for federal officer jurisdiction, and the AFFF manufacturers relied on MilSpec AFFF PFAS sources to invoke federal officer jurisdiction. For assessing 3M's removal of this case based on MilSpec AFFF allegations, the plaintiffs' putative disclaimers of MilSpec AFFF-related damages in *Ridgewood Water* and *Nessel* are functionally equivalent to the State's assertion that its claims do not relate to AFFF at all. In each case the plaintiffs (like the State here) purported to disclaim the basis for federal officer jurisdiction, yet the courts held that federal officer removal was proper. The State provides no coherent reason why the reasoning of those cases is inapplicable here.

The State also attempts to identify First Circuit authority under which the complaint's putative disclaimer "nullifie[s]" federal officer jurisdiction, Mot. 6, but the State misreads *Rhode Island v. Shell Oil Products Co.*, 979 F.3d 50 (1st Cir. 2020). There, the First Circuit did affirm an order remanding that case for lack of federal officer jurisdiction. But the court held that Rhode Island's claims did not relate to federal officer involvement because "Rhode Island is alleging the oil companies produced and sold oil and gas products in Rhode Island that were damaging the

10

environment and engaged in a misinformation campaign," and the oil companies' federal contracts "mandate none of those activities." *Id*. at 60 (noting that the contracts "address[ed] extraction, not distribution or marketing"); *see also Rhode Island v. Shell Oil Prods. Co.,* 35 F.4th 44, 53 n.6 (1st Cir. 2022) (adhering to its prior decision after Supreme Court's vacatur of that decision). That holding does not affect 3M's basis for removal in any way: the State here has filed two overlapping lawsuits that together seek recovery from 3M for making products using PFAS—including AFFF used at military sites—and the military *did* mandate that AFFF contain PFAS. See NOR ¶ 20-22. Moreover, Rhode Island's false-advertising claims, unlike the State's claims here, did not involve the "difficult causation question" of whether the alleged contamination arose in part from products made for the government—a question that itself warrants federal removal (notwithstanding the State's disclaimer) because it should be litigated in federal court. *Baker*, 962 F.3d at 945 n.3.[9]

The State does cite several asbestos cases in which district courts held that they lacked federal officer jurisdiction because the complaints disclaimed relief for acts undertaken at a federal officer's direction, *see* Mot. 6 & n.3, but none of those cases is like this one. Unlike the State, the plaintiffs in those cases did not purport to disclaim relief in one action while explicitly seeking the same relief in a different action. Here, the State has *not* disclaimed relief for harms from AFFF. Instead, it has impermissibly split its claims to try to avoid federal jurisdiction over its putative "non-AFFF" claims, while simultaneously litigating its AFFF claims in the MDL. Courts have *not* respected plaintiffs' "disclaimers" when, as here, they are "merely artful pleading designed to circumvent federal officer jurisdiction." *Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 451 (5th Cir. 2021); *see also Federated Dep't Stores, Inc. v. Moitie*,

---

[9] The State also cites the JPML's order denying transfer of *New Hampshire* to the MDL on the ground that New Hampshire's putative non-AFFF and AFFF cases supposedly relate to separate contamination sites, *see* Mot. Ex. 1; but the JPML's own standards for transfer under 28 U.S.C. § 1407 are distinct from those governing whether a defendant has a right to a federal forum under 28 U.S.C. § 1442(a)(1) to assert a federal defense.

11

452 U.S. 394, 397 n.2 (1981) (courts do "not permit plaintiff to use artful pleading to close off a defendant's right to a federal forum"); *O'Connell*, 544 F. Supp. 2d at 54 n.6 ("even artful pleading around any federal claims cannot defeat federal subject matter jurisdiction" (quoting *Machnik v. Buffalo Pumps Inc.*, 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007))); *Jennings v. Bell Helicopter Textron, Inc.,* 2012 WL 12883239, at *4 (S.D. Cal. Oct. 23, 2012). *Nessel* correctly applied that rule to hold that Michigan's "attempt to surgically divide [its] complaints" was "artful pleading" that did not preclude the court's exercise of jurisdiction over the putative non-MilSpec AFFF case. *Nessel*, 2021 WL 744683, at *3. The State's putative disclaimer of AFFF-related damages, made while pursuing exactly those damages in the MDL, likewise does not bar federal officer removal.

3M is entitled to dispute the State's effort to split its claims between its two lawsuits, and to raise MilSpec AFFF-related defenses to the State's purported "non-AFFF" claims. The State cannot deprive 3M of its defenses just by asserting that AFFF is not at issue here. The very existence of a fact dispute over whether MilSpec AFFF caused the alleged contamination entitled 3M to remove this case to litigate that dispute in federal court. *See Baker*, 962 F.3d at 945 n.3.

## II.    3M Properly Removed This Action Based On Federal Enclave Jurisdiction.

3M also properly removed this case because the State's claims arise partly from PFAS releases on federal enclaves. *See* NOR ¶¶ 48-52. The State does not deny that at least Brunswick Naval Air Station and Portsmouth Naval Shipyard were federal enclaves at relevant times. *See id*. ¶ 51. Nor does the State deny that AFFF was used at those sites. *See id*. ¶¶ 28-29. To the extent that the State's claims encompass PFAS releases at federal enclaves—whether from AFFF or from non-AFFF-related processes—this Court has jurisdiction over those claims. *See Rhode Island*, 35 F.4th at 58 ("Federal courts have federal-question jurisdiction over tort claims arising on federal enclaves."). Indeed, federal enclave jurisdiction exists even for claims for PFAS that may arise from use of *non*-AFFF products on military facilities—such as in metal plating operations—so the

State cannot argue that its putative AFFF disclaimer bars federal jurisdiction over those claims.[10]

The State mistakenly argues that the Court cannot exercise federal enclave jurisdiction here because "'the doctrine of federal enclave jurisdiction generally requires that *all* pertinent events take place on a federal enclave.'" Mot. 10 (quoting *Rhode Island*, 35 F.4th at 58). The State is correct that federal enclave jurisdiction extends only to claims arising from events on a federal enclave. But the State fails to recognize that—because the Court has federal enclave jurisdiction over the State's claims to the extent that they arose on federal enclaves—this Court has supplemental jurisdiction over the rest of the State's claims. *See In re AFFF*, 2019 WL 2807266, at *3-4. In a PFAS case brought by the State of New York, the MDL Court ruled that—because it had federal enclave jurisdiction over the State of New York's claims for alleged contamination from AFFF use at one federal enclave—it could exercise supplemental jurisdiction over the State of New York's claims for alleged PFAS contamination arising from other sites. *See id.* at *4 (citing 28 U.S.C. § 1367); *see also* NOR ¶ 52. This Court can and should do the same here. The First Circuit's *Rhode Island* decision is not to the contrary and, like the State's Motion, simply does not address supplemental jurisdiction.[11] The State should not now be heard to argue for another tactical splitting of its claims—between those that do and those that do not arise on federal enclaves.

## CONCLUSION

If the Court does not defer consideration, the Court should deny the Motion to Remand.

---

[10] The U.S. military has acknowledged that PFAS may arise from non-AFFF-related activities at military facilities. *See, e.g.*, Naval Facilities Engineering Systems Command (NAVFAC), *Interim Per- and Polyfluoroalkyl Substances (PFAS) Site Guidance for NAVFAC Remedial Project Managers (RPMs)* (Nov. 2020 Update), https://www.secnav.navy.mil/eie/Policies%20and%20Guidance%20Docs/2020%20November%2024%20Final%20 NAVFAC%20Interim%20PFAS%20Guidance%20FAQs%20(5).pdf, at 5 ("PFAS may have been used in mist suppression at hard chrome plating shops"); *id*. at 10 ("Although AFFF is typically the primary source of PFAS releases at Naval installations, PFASs could also be found in a variety of other materials/processes").

[11] *Rhode Island* is also distinguishable: there, neither the oil companies' allegedly deceptive marketing nor Rhode Island's claimed injuries were related to events that took place on any federal enclave. *See Rhode Island*, 35 F.4th at 58. But here the State itself alleged in its AFFF Complaint that some of the State's claimed PFAS damages for which 3M purportedly is liable arose from AFFF use on at least two federal enclaves. *See* AFFF Complaint ¶¶ 210, 224.

|  |  |
|---|---|
|  | Respectfully submitted, |
| June 15, 2023 | */s/ Daniel L. Ring* |

               Respectfully submitted,

June 15, 2023        */s/ Daniel L. Ring*
               Daniel L. Ring (*pro hac vice*)
               Michael A. Scodro (*pro hac vice*)
               Mayer Brown LLP
               71 South Wacker Drive
               Chicago, IL 60606
               Telephone: (312) 782-0600
               Email: dring@mayerbrown.com
               Email: mscodro@mayerbrown.com

               Jay S. Geller (Maine Bar No. 009022)
               Law Office of Jay S. Geller
               Lunt Professional Building
               74 Lunt Road, Suite 206
               Falmouth, ME 04105
               Telephone: (207) 899-1477
               Email: jgeller@jaysgellerlaw.com

               *Counsel for 3M Company*

## CERTIFICATE OF SERVICE

      I hereby certify that on June 15, 2023, I caused the foregoing document, with its exhibits, to be filed with the Clerk of the Court through the ECF/CM system, which will serve notice of the filing upon all counsel of record. I further certify that on June 15, 2023, I caused a true and correct copy of the foregoing document to be served by Email on the following:

Amy E. Wilson  
General Counsel and Corporate Secretary  
Dow Inc.  
2211 H.H. Dow Way  
Midland, MI 48674  
Email: aewilson@down.com

*Counsel for Defendant Dow Inc.*

Dated: June 15, 2023                       */s/ Daniel L. Ring*  
                                                                        Daniel L. Ring