UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| STATE OF MAINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-00210-JAW |
| | ) | |
| 3M COMPANY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTIONS TO REMAND AND STAY

Based on a state plaintiff's express and enforceable disclaimer against seeking recovery in this lawsuit from the defendants for claims relating to aqueous film-forming foam, the sole basis for federal jurisdiction, this Court concludes that it does not have jurisdiction over a parens patriae lawsuit against manufacturers of per- and polyfluoroalkyl substances and grants the state's motion to remand the case to state court. The Court declines to stay ruling on the motion to remand while the United States Judicial Panel on Multidistrict Litigation rules on a motion to transfer the case to a multidistrict litigation proceeding because the Court has determined that in any event, it does not have jurisdiction over the lawsuit.

## I.   BACKGROUND

### A.   Two Lawsuits

On March 29, 2023, the state of Maine (Maine or State) in its parens patriae[1] capacity filed two separate civil actions against 3M Company and other defendants

---

[1] A parens patriae lawsuit "involves a matter of sovereign or quasi-sovereign interest and is brought by a state on behalf of all its citizens." *New Hampshire v. 3M Corporation*, No. 22-cv-145-LM,

(collectively 3M) in state of Maine Superior Court for Cumberland County. *Notice of Removal*, *State of Me. v. 3M Co.*, No. 2:23-cv-00197-JAW, Attach. 3, *Compl.*, (ECF No. 1) (*AFFF Compl.*), *id., State Ct. R.*, Attach. 1, *State Ct. Docket* (filed under state docket number PORSC-CV-2023-00122) (ECF No. 9); *Notice of Removal*, *State of Me. v. 3M Co.*, No. 2:23-cv-00210-JAW, Attach. 3, *Compl.*, (ECF No. 1) (*Non-AFFF Compl.*), *id., State Ct. R.*, Attach. 1, *State Ct. Docket* (filed under state docket number PORSC-CV-2023-00121) (ECF No. 15). Both lawsuits involve per- and polyfluoroalkyl substances (PFAS). But the first lawsuit — docket number 2:23-cv-00197-JAW — is directed to the use of aqueous film-forming foam, and the second lawsuit — docket number 2:23-cv-00210-JAW — is not. The parties refer to the two complaints as either the AFFF Complaint (2:23-cv-00197-JAW) or the Non-AFFF Complaint (2:23-cv-00210-JAW).

**B.    The AFFF Complaint**

Turning first to the AFFF Complaint, 3M removed the case from state to federal court on May 8, 2023. *Notice of Removal* (ECF No. 1). On May 24, 2023, the United States Judicial Panel on Multidistrict Litigation (JPML) issued a conditional transfer order, accepting the case as a tag-along action for transfer to the United States District Court for the District of South Carolina in *In re: Aqueous Film-Forming Foam Products Liability Litigation*, *MDL Conditional Transfer Order* (ECF No. 14) (MDL Litigation). On June 9, 2023, that order was certified, *id., MDL Conditional Transfer Order* (ECF No. 15), and the Clerk's Office electronically transferred the case to the MDL in United States District Court for the District of

_____

2023 U.S. Dist. LEXIS 53461, at*3 n.1 (D.N.H. March 29, 2023) (citation and internal quotations omitted).

South Carolina. (ECF No. 16).  The transfer of the AFFF Complaint to the District of South Carolina appears noncontroversial.

### C.    The Non-AFFF Complaint

The same cannot be said for the Non-AFFF Complaint.  On May 17, 2023, 3M removed the case to this Court.  *Case No. 2:23-cv-00210-JAW, Notice of Removal* (ECF No. 1).  On May 25, 2023, the State moved to remand the case to state of Maine Superior Court and for expedited briefing.  *State of Me.'s Mot. to Remand* (ECF No. 10) (*Mot. to Remand*); *State of Me.'s Mot. for Expedited Briefing and Consideration of Mot. to Remand* (ECF No. 11).  On June 1, 2023, the JPML declined to accept the Non-AFFF Complaint as part of the MDL Litigation.  *Notice of Counsel* (ECF No. 18).  On June 8, 2023, 3M filed a motion to stay the Non-AFFF litigation until the JPML resolves 3M's motion to transfer the Non-AFFF Litigation to the District of South Carolina for disposition with the MDL Litigation there.  *Def. 3M Company's Mot. to Stay* (ECF No. 31) (*Mot. to Stay*).  On June 15, 2023, 3M responded to the State's motion to remand and the State responded to 3M's motion to stay.  *Def. 3M Company's Obj. to State of Me.'s Mot. to Remand* (ECF No. 34) (*3M Remand Opp'n*); *Pl.'s Opp'n to Def. 3M Company's Mot. to Stay* (ECF No. 35) (*State's Stay Opp'n*).  On June 22, 2023, 3M filed a reply in support of its motion to stay and the State filed a reply in support of its motion to remand.  *Def. 3M Company's Reply in Support of Mot. to Stay* (ECF No. 37) (*3M Stay Reply*); *State of Me.'s Reply in Support of Mot. to Remand* (ECF No. 38) (*State Remand Reply*).

### D.    The Motions to Strike, File a Surreply, and Expedite Briefing

On June 27, 2023, 3M filed a motion to strike or, in the alternative, a motion for leave to file a surreply. *Def. 3M Company's Mot. to Strike Decl. and Portions of Pl.'s Reply in Support of Mot. to Remand or, in the Alternative, for Leave to File Surreply* (ECF No. 39) (*3M's Mot. to Strike*). On July 1, 2023, the State filed an opposition to the motion to strike or file surreply. *Pl. State of Me.'s Opp'n to Def. 3M Company's Mot. to Strike Decl. and Portions of Pl.'s Reply in Support of Mot. to Remand or, in the Alternative, for Leave to File Surreply* (ECF No. 41) (*State's Strike Opp'n*). On July 1, 2023, the State also filed a motion for expedited briefing and consideration of 3M's motion to strike or file surreply. *Pl. State of Me.'s Mot. for Expedited Briefing and Consideration of 3M's Mot. to Strike Decl. and Portions of Pl.'s Reply in Support of Mot. to Remand or, in the Alternative, for Leave to File Surreply* (ECF No. 42) (*State's Expedited Mot.*).

On July 5, 2023, the Court addressed and resolved a controversy between the parties concerning the motion to strike, the motion to stay, and the motion for expedited briefing. *Order on Mot. to Strike, Mot. to Stay, and Mot. for Expedited Briefing* (ECF No. 44). On July 12, 2023, 3M filed a surreply, *3M Co.'s Surreply in Opp'n to Mot. to Remand* (ECF No. 45) (*3M's Surreply*), and on July 17, 2023, the State filed a surrebuttal. *State of Maine's Rebuttal to Def. 3M Co.'s Surreply to State of Maine's Mot. to Remand* (ECF No. 46) (*State Surrebuttal*).

## II.   THE CONTROVERSY

In filing two lawsuits in state court, the State has attempted to make a "sharp distinction" between PFAS and AFFF contamination with one lawsuit devoted to

4

PFAS contamination and the other to AFFF contamination.  *Mot. to Remand* at 5.  By its drafting of the two complaints, the State has chosen a state court forum for its Non-AFFF complaint, while conceding the federal forum for its AFFF claims.  *Id.*

In its opposition to the State's motion to remand, 3M contends that the "State's attempt to split its claims and plead around federal jurisdiction fails."  *3M's Remand Opp'n* at 1.  3M explains that the AFFF claims fall within federal jurisdiction because AFFF was manufactured in compliance with specifications from the United States Military (MilSpec AFFF) and therefore are subject to federal officer jurisdiction.  *Id.*  3M maintains that AFFF and Non-AFFF sources of contamination are commingled and at the very least, 3M has the right to also assert federal government contractor defenses to the Non-AFFF claims.  *Id.* at 6.  This dispute also provides the context for 3M's motion to stay in which 3M is asking the Court to delay disposition of the motion to remand until the JPML issues a ruling on whether the Non-AFFF lawsuit may be accepted into the MDL Litigation.  *Mot. to Stay* at 1-14.

In its opposition to the motion to stay, the State attached a sworn declaration of Victoria Eleftheriou.  *State's Stay Opp'n,* Attach. 1, *Decl. of Victoria Eleftheriou in Support of Pl.'s Opp'n to 3M Company's Mot. to Stay* (*Eleftheriou Decl.*).  Ms. Eleftheriou, the Deputy Director of the Maine Department of Environmental Protection's Bureau of Remediation and Waste Management, essentially reviews the specific sites that are the subject of the Non-AFFF contamination litigation and represents that there is no evidence of AFFF contamination in those PFAS sites.  *Id.* at 1-7.

This description sets the stage for the State's motion to remand and 3M's motion to stay, except to note that from the perspective of the State, there is some urgency. After June 1, 2023, when the JPML declined to accept transfer of the Non-AFFF lawsuit into the MDL Litigation, 3M moved for the JPML to accept the Non-AFFF lawsuit. *3M's Mot. to Stay* at 3-4. The parties later received notice that the JPML would hear 3M's transfer motion at its meeting on July 27, 2023. *3M Stay Reply,* Attach. 1, *JPML Notice of Hr'g Session* at 4. The State is very concerned that once 3M's motion to transfer is considered by the JPML, it will substantially delay the disposition of its motion to remand. *State Stay Opp'n* at 13. The State therefore has urged the Court to issue a ruling on the motion to remand before the JPML acts on 3M's motion to transfer and 3M has urged the Court to delay ruling on the motion to remand until the JPML has issued its ruling.

## III.   THE POSITIONS OF THE PARTIES

### A.   The Motion to Remand

#### 1.   The State's Motion to Remand

On May 25, 2023, the State moved to remand this case to state of Maine Superior Court. *Mot. to Remand* at 5-15. First, the State stresses that it deliberately divided its civil actions between the AFFF and the Non-AFFF lawsuits. *Id.* at 5. The AFFF lawsuit is now subject to the MDL Litigation in South Carolina and the State nowhere argues that this transfer was improper. *Id.* at 5-15. By contrast, in its Non-AFFF lawsuit, the State expressly disclaimed "seeking relief for AFFF-related contamination: 'The State is not seeking to recover through this Complaint any relief

for contamination or injury related to Aqueous Film Forming Foam.'" *Id.* at 9 (quoting *Compl.* ¶ 15).

For the AFFF complaint, the State acknowledges that this Court may have jurisdiction under so-called "federal officer jurisdiction". *Id.* at 6. Federal officer jurisdiction can be a "colorable federal defense to [a] lawsuit," where there is a "nexus between the allegations in the complaint and conduct undertaken at the behest of a federal officer." *Id.* at 6-7 (quoting *Rhode Island v. Shell Oil Prod. Co.*, 979 F.3d 50, 59 (1st Cir. 2020), *vacated on other grounds* 141 S. Ct. 2666 (2021) (*Rhode Island I*)). However, the State contends that federal officer jurisdiction is not available for the Non-AFFF complaint. *Id.* at 6-7.

The State observes that to establish federal officer jurisdiction, 3M points to four sites — the Army National Guard facility in Bangor, the former Loring Air Force Base in Aroostook County, the former Brunswick Naval Air Station, and the Portsmouth Naval Shipyard — where 3M asserts that PFAS and AFFF were commingled. *Id.* at 7-8. But the State says that there is no evidence of commingling on any of these four sites. *Id.* Moreover, the State goes on to state that none of these four sites was identified in its Non-AFFF complaint. *Id.* at 8-9. In addition, the State reiterates that even if 3M could demonstrate commingling, the State disclaimed in this lawsuit any relief from the Non-AFFF complaint. *Id.* at 9. For support, the State points to two court decisions in the First Circuit: *New Hampshire v. 3M Corporation*, No. 22-cv-145-LM, 2023 U.S. Dist. LEXIS 53461 (D.N.H. Mar. 29, 2023) and *Rhode*

*Island I*, 979 F.3d 50.  The State then distinguishes the cases it anticipated 3M would cite for support.  *Id.* at 9-13.

There is a second possible source of federal jurisdiction — federal enclave jurisdiction.  *Id.* at 14.  The State anticipates that 3M will maintain that Portsmouth Naval Shipyard and the Brunswick Naval Air Station were federal enclaves, thereby affording federal jurisdiction.  *Id.*  But the State relies on a First Circuit case, *Rhode Island v. Shell Oil Products, Company*, 35 F.4th 44 (1st Cir. 2022) (*Rhode Island II*), to argue that federal enclave jurisdiction is not available to 3M.  *Id.*

### 2.     3M's Opposition to Remand

3M begins its opposition by disputing the premise of the State's argument: namely, that PFS and AFFF sources of contamination can be neatly separated.  *3M Remand Opp'n* at 5-6.  Instead, 3M says that "PFAS can move through the environment — both from natural processes like transport in groundwater and because people collect, move and spread PFAS-containing waste — so PFAS from AFFF and non-AFFF sources plausibly have *commingled* at various locations."  *Id.* at 6 (emphasis in original).  3M maintains that "MilSpec AFFF thus is at issue even in this putative 'non-AFFF' case for statewide damages."  *Id.*  3M contends that AFFF was used in military sites throughout Maine and that the State alleged in its AFFF lawsuit that PFAS and AFFF contaminated sites throughout the state of Maine.  *Id.* at 8-9.  3M relies particularly on *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 U.S. Dist. LEXIS 39175 (W.D. Mich. Jan. 6. 2021) and *In Re AFFF Products Liability Litigation*, No. 18-nm-2873, ECF No. 325 (D.S.C. Oct. 1. 2019).  *Id.* at 10-11.  3M says

8

that the *New Hampshire* case was "wrongly decided" and notes that it is currently on appeal before the First Circuit. *Id.* at 6, n.3.

3M posits that the State's disclaimer of AFFF liability does not preclude federal jurisdiction. *Id.* at 13. This is because, 3M observes, the well-pleaded complaint rule does not apply to federal officer removal. *Id.* 3M then disputes the State's interpretation of relevant caselaw. *Id.* at 13-16.

Regarding federal enclave jurisdiction, 3M says that the State does not dispute that Brunswick Naval Air Station and Portsmouth Naval Shipyard were federal enclaves and used AFFF. *Id.* at 16. 3M argues that this Court therefore has supplemental jurisdiction over the state claims. *Id.* at 16-17.

### 3.    The State's Reply

In reply, the State contends that 3M's arguments in favor of federal jurisdiction are "conclusory, speculative and controverted by actual evidence." *State Remand Reply* at 5. The State analyzes each case 3M cited and maintains that they do not support 3M's contentions. *Id.* at 7-9. Discussing *Rhode Island II*, the State writes that this case does not support federal jurisdiction because all pertinent events did not take place on the federal enclaves. *Id.* at 10-11.

### 4.    3M's Surreply

In its surreply, 3M focuses on the sworn declaration of Victoria Eleftheriou (attached to the State's reply to the motion to stay), and argues that the Court should not consider her statements for three reasons: (1) because they are "legally irrelevant to whether 3M adequately alleged a plausible basis for federal officer jurisdiction in

its Notice of Removal," (2) even if the Court considered the Eleftheriou statements, they "do not address – much less controvert – most of the facts 3M averred in support of federal officer jurisdiction," and (3) it would be "error to order remand based on the Declaration without giving 3M a fair opportunity to contest it." *3M Surreply* at 1.

### 5. The State's Surrebuttal

In its surrebuttal, the State argues that 3M has conceded that the lawsuits involving two water districts, which were the subject of Deputy Director Eleftheriou's declaration, are irrelevant to the Court's remand determination. *State's Surrebuttal* at 8. But the State's overall response is that the Court does not need to consider the Eleftheriou declaration to rule on the motion to remand. *Id.* at 4. Finally, the State rejects 3M's discovery demand, pointing out that the Eleftheriou declaration's reference to the water districts is not mentioned in the 3M Notice of Removal and that 3M has not created a reasonable expectation that discovery would reveal facts relevant to the Court's remand decision. *Id.* at 10. The State ends by arguing that "3M does not want discovery, it wants delay." *Id.* at 11.

### B. The Motion to Stay

#### 1. 3M's Motion to Stay

On June 8, 2023, 3M moved this Court to defer action on the State's motion to remand until the JPML has ruled on its motion for transfer. *3M's Stay Mot.* at 1-10. Quoting *Good v. Altria Group, Inc.*, 624 F. Supp. 2d 132 (D. Me. 2009), 3M points out that "[c]ourts frequently grant stays pending a decision by the [JPML] regarding whether to transfer a case." *Id.* at 5 (quoting *Good*, 624 F. Supp. 2d at 134). 3M notes

that if the JPML accepts the case for transfer, the MDL would have the authority to rule on the motion to remand, and a MDL ruling on the motion to remand would have the benefit of consistency and judicial economy.  *Id.* at 6.

3M then argues that this case would be a "good candidate for transfer" to the MDL.  *Id.*  3M observes that the State's other AFFF case has already been transferred to the MDL.  *Id.*  3M contends that the JPML has accepted transfer in other cases similar to Maine's Non-AFFF case on the ground that the same water sources were involved.  *Id.* at 6-7.

3M discounts any prejudice to the state of Maine by a stay.  *Id.* at 7-8.  3M notes that the JPML is scheduled to hear the motion for transfer on July 27, 2023,[2] and it asserts that the JPML typically issues a decision on a motion for transfer within a week or two of the hearing session.  *Id.*  By contrast, if this Court issues an order on the motion to remand, 3M raises the specter of inconsistent remand decisions, which it argues would greatly prejudice 3M.  *Id.*

## 2.  The State's Opposition to the Motion to Stay

The State strenuously objects to 3M's motion to stay.  *State Stay Opp'n* at 1-14.  The State's main point is that the JPML will not address the issue the State has raised: namely, whether federal jurisdiction is proper for this Court.  *Id.* at 5.  The State maintains that the JPML "reviews only whether, on the face of the various complaints, there is apparent overlap between a given complaint and an MDL."  *Id.*

---

[2]        At the filing of 3M's motion, it was unclear whether the JPML would hear the 3M motion for transfer on July 27, 2023 or September 28, 2023.  *3M Stay Mot.* at 8.  Since then, the JPML scheduled the motion for transfer without oral argument for the hearing session of July 27, 2023.  *3M Stay Reply*, Attach. 1, *JPML Notice of Hr'g Session* at 4.

The State contends that to allow the JPML to consider whether to accept this case would "needless delay the case even as the State urgently seeks to move it forward to obtain the funds needed to clean up Maine's environment." *Id.* The State says that "[i]n view of established principles of comity and federalism, subject mater jurisdiction can and should be decided at the very outset of the litigation, particularly in a case brought by the sovereign in its own state's court." *Id.*

### 3.    3M's Reply to the State's Stay Opposition

In its reply, 3M cites *Good* and other cases, in which courts have granted a stay to allow the JPML to rule on whether it would accept transfer into the MDL. *3M's Stay Reply* at 4-8. Alternatively, 3M argues that the analysis in *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044 (E.D. Wisc. 2001) counsels against deciding the jurisdictional issue here because 3M views the jurisdictional issue as factually and legally complex. *Id.* at 8-9. 3M deflects any prejudice on the part of the State from a stay and requests that the Court defer decision until the JPML has decided the pending motion to transfer. *Id.* at 10.

## IV.    DISCUSSION

Preliminarily, this Court retains jurisdiction to consider the motion to remand: "The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." *Nessel*, 2021 U.S. Dist. LEXIS 39175, at *5-6 (quoting *JPML R.* 2.1(d)).

12

In analyzing the dueling motions to stay and remand, the Court is fortunate that it does not operate from a blank slate. First, the Court finds persuasive the "three-step methodology" for "balance[ing] the imperative of ensuring federal jurisdiction and the benefits of multidistrict litigation" announced in *Meyers*, 143 F. Supp. 2d at 1049 and recently applied in the District of Maine in *Eastern Maine Medical Center v. Teva Pharmaceuticals USA Inc.*, 581 F. Supp. 3d 281, 285-86 (D. Me. 2022). The Court adopts Chief Judge Levy's observation that "[t]his three-step approach appropriately accommodates the fundamentality of subject-matter jurisdiction within the federal system and the virtues of judicial economy, efficiency, and consistency promoted by multidistrict litigation." *Id.* In *Eastern Maine*, quoting *Meyers*, Chief Judge Levy described the three-step methodology:

> First, if a "preliminary assessment suggests that removal was improper, the court should promptly . . . remand the case to state court." *Meyers*, 143 F. Supp. 2d at 1049. But if the preliminary assessment instead reveals that the jurisdictional issue is "factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the" multidistrict litigation. *Id.* If so, "the court proceed[s] to the third step and consider[s] the motion to stay," although this third step "does not mandate that a stay should be granted." *Id.*

*E. Maine*, 581 F. Supp. 3d at 285. In accordance with the first step of the three-step methodology, the Court turns first to the motion to remand and next addresses the motion for stay. Next, in addressing the first step of the *Meyers* analysis, the Court has the benefit of a recent decision on a similar question authored by Chief Judge Landya McCafferty of the District of New Hampshire in *New Hampshire*, 2023 U.S.

Dist. LEXIS 53461, at *1-28, a case currently on appeal to the Court of Appeals for the First Circuit.

### A.    Motion to Remand

In the two state of Maine complaints, the State has sought to proceed on two distinct factual and legal theories: an AFFF lawsuit, which it concedes has been properly transferred to the MDL, and a Non-AFFF lawsuit, which it contends is not subject to federal jurisdiction.  In a typical case, the State as plaintiff is the "master" of its complaint.  *The Fair v. Kohler Die and Specialty Co.*, 228 U.S. 22, 25 (1913) (Holmes, J.).  This precept known as the "well-pleaded complaint rule" concentrates a court's attention "on the complaint's terms" and its analysis is "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Rhode Island II*, 35 F.4th at 51 (citing *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914)).  Based on this precept alone, the State's position on remand would be unassailable because the State-drafted complaints carefully differentiate between the AFFF and Non-AFFF lawsuits, and the Non-AFFF complaint, especially given its disavowal of any AFFF claim, would be appropriate for remand.  *See New Hampshire*, 2023 U.S. Dist. LEXIS 53461, at *28 ("[I]n most circumstances, the non-federal cast of a complaint would prevent a defendant from removing it"); *Rhode Island II*, 35 F.4th at 51.  Thus, to the extent 3M purports to remove this case to federal court pursuant to 28 U.S.C. § 1441, *see Notice of Removal* at 1 ("Defendant 3M Company [3M] by undersigned counsel hereby gives notice of removal of this action, pursuant

to 28 U.S.C. §§ 1331, 1441, 1442(a)(1), and 1446"), a straightforward review of the Non-AFFF complaint would dictate remand.

But federal jurisdictional law is seldom so simple.  As a basis for removal, 3M also invokes § 1442(a)(1), the federal officer removal statute.  In 1999, the United States Supreme Court wrote:

> To remove a case as one falling within federal-question jurisdiction, the federal question ordinarily must appear on the face of a properly pleaded complaint; an anticipated or actual federal defense generally does not qualify a case for removal. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908).  Suits against federal officers are exceptional in this regard. Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal question element is met if the defense depends on federal law.

*Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 430-31 (1999).  Since *Jefferson County*, Congress broadened the application of the federal officer removal statute to include cases where there is only a connection or association between the act in question and the federal office.  *See Sawyer v. Forster Wheeler*, 860 F.3d 249, 258 (4th Cir. 2017).[3]

Judge McCafferty explained the nexus requirement:

> The requirement that a claim be "for" or "relate to" the alleged federal authority is a "nexus" requirement, but not a causation requirement. *Moore* [*v. Elec. Boat Corp.*,] 25 F.4th [30,] 34 & n.2 [1st Cir. 2022].  That is, only a "nexus" between the claims and the alleged official authority

---

[3]      In *Sawyer v. Foster Wheeler, LLC*, 860 F.3d 249 (4th Cir. 2017), the Fourth Circuit observed that before 2011, the statutory test in § 1442 was whether "there was a causal connection between the charged conduct and the asserted official authority."  *Id.* at 258 (quoting *Jefferson Cnty.*, 527 U.S. at 431).  However, in 2011, Congress broadened § 1442(a)(1) to cover actions "for *or relating to* any act under color of [federal] office," adding the words "or relating to" Removal Clarification Act of 2011, Publ. L. No. 112-51, 125 Stat. 545.  *Id.* (emphasis in *Sawyer*).  This new language "broaden[ed] the universe of acts" that enable federal removal, H.R. Rep. 112-17, 6, 2011 U.S.C.C.A.N. 420, 425, such that there need be only "'a *connection or association* between the act in question and the federal office.'" *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016) (emphasis added) (quoting *In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Defender Assoc.*, 790 F.3d 457, 471 (3d Cir. 2015)).

need exist; it is sufficient that at least one of the plaintiff's claims is "connected" or "associated" with the defendant's acts under color of federal office. *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 943-44 (7th Cir. 2020) (explaining that 2011 amendments to § 1442(a)(1) removed requirement of causal connection and collecting appellate cases holding likewise).

*New Hampshire*, 2023 U.S. Dist. LEXIS 53461, at *21-22.

Applying this precedent, the Court turns to whether there is a connection or association between the allegations in the Non-AFFF lawsuit and a federal office. The Court briefly returns to the legal standards. In *Rhode Island I*, the First Circuit described the standard:

> Private actors sued in state court can remove the case to federal court where the private actor is "acting under [any federal officer], for any act under color of such office." 28 U.S.C. § 1442(a)(1); *accord Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 486-87 (1st Cir. 1989). "Acting under" connotes "subjection, guidance, or control" and involves "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson v. Phillip Morris Companies, Inc.*, 551 U.S. 142, 152 (2007) (citations omitted).

979 F.3d at 59. The *Rhode Island I* Court went on to state:

> To succeed in their argument that federal-officer removal is proper in this case, the oil companies must show that they were acting under a federal officer's authority, that they will assert a colorable federal defense to the suit, and that there exists "a nexus" between the allegations in the complaint and conduct undertaken at the behest of a federal officer. *Jefferson Cty.*, 527 U.S. at 431 (internal quotation marks and citations omitted). If the oil companies cannot demonstrate all three of these elements, they cannot remove the case to federal court under § 1442.

*Id.* As Chief Judge McCaffrey noted, unlike a § 1441 removal, a removal under § 1442(a)(1) "is broadly construed 'in favor of <u>removal</u>.'" *New Hampshire*, 2023 U.S. Dist. LEXIS 53461, at *21 (citing *Watson*, 551 U.S. at  147-48  (emphasis in *New*

16

*Hampshire*).  This is because "[o]ne of the primary purposes of the removal statute—as its history clearly demonstrates—was to have such defenses litigated in federal court."  *Id.* (quoting *Willingham v. Morgan,* 395 U.S. 402, 406 (1969)).  At the same time, 3M "bears the burden under § 1442(a)(1)."  *Moore*, 25 F.4th at 34.

In its Non-AFFF complaint against 3M, the State has made it plain that it is "not seeking to recover through this Complaint any relief for contamination or injury related to Aqueous Film Forming Foam, a firefighting material that contains PFAS." *Non-AFFF Compl.* ¶ 15.  In addition to this allegation in the Non-AFFF Complaint, the State has represented in its filings that "[i]f it does turn out that contamination in *any* particular site or location is related to AFFF, then the State has disclaimed seeking a recovery in this action for that site or location."  *State's Remand Mot.* at 9 (emphasis in original).

Despite the State's disclaimer and the State's second AFFF lawsuit, 3M maintains that this Court should retain this case under its federal officer jurisdiction. *3M's Remand Opp'n* at 1-17.  3M first observes that PFAS can "move through the environment—both from natural processes like transport in groundwater and because people collect, move, and spread PFAS-containing waste—so PFAS from AFFF and non-AFFF sources plausibly have *commingled* at various locations."  *Id.* at 6 (emphasis in original).  If so, 3M says that it "has the right to defend itself by raising the issue of whether alleged 'non-AFFF' PFAS contamination may actually derive from MilSpec AFFF, and by asserting its federal government contractor defense as to any claimed damaged from MilSpec AFFF."  *Id.*  Next, 3M argues that it properly

17

removed the case based on "federal enclave jurisdiction" because "PFAS from AFFF and non-AFFF products plausibly were released from military bases in Maine that are federal enclaves." *Id.*

In support of its position, 3M points to four and sometimes five military facilities throughout the state of Maine, Brunswick Naval Air Station, Portsmouth Naval Shipyard, Loring Air Force Base, Bangor Air National Guard Base, and the Cutler Naval Air Station, that the State claims in its AFFF Complaint caused PFAS contamination in groundwater "*throughout the State.*" *Id.* at 4 (quoting *AFFF Compl.* ¶ 224) (emphasis in *3M Remand Opp'n*); *see Notice of Removal* at 10.

Although the parties fence about seepage of AFFF contamination in specific instances, such as military installations and water districts, the determinative question rests on the interplay between the asserted federal affirmative defense and a motion to remand. In *Jefferson County*, the Supreme Court addressed how a district court is to approach the assertion of an affirmative defense as the basis for federal jurisdiction. 527 U.S. at 431. The *Jefferson County* Court required that the affirmative defense be "colorable," *id.*, and noted that courts should not construe the federal defense requirement with a "narrow, grudging interpretation" because "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Id.* (quoting *Willingham*, 395 U.S. at 407). Thus, as the Supreme Court observed in *Kircher v. Putnam Funds Trust*, 547 U.S. 633 (2006), "[t]he federal officer removal statue allows 'suits against federal officer [to] be removed despite the nonfederal cast of the complaint,' *id.* at 645 n.9, (quoting

18

*Jefferson Cnty.*, 527 U.S. at 431), and reflects a congressional policy that 'federal officers, and indeed the Federal Government itself, require the protection of a federal forum.'" *Id.* (quoting *Willingham*, 395 U.S. at 407).

Although the First Circuit has not used this term, courts sometimes describe the burden on the removing party as making a "plausible" claim of federal officer defense. *See Graves v. 3MCo.*, 17 F.4th 764, 771 (8th Cir. 2021) ("For a defense to be considered colorable, it need only be plausible") (citation omitted); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir. 2010); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996).

Applying these principles to AFFF and Non-AFFF litigation, the district courts in *New Hampshire* and *Nessel* reached different conclusions.  As here, in *Nessel*, the state of Michigan attempted to strictly divide two lawsuits—one AFFF and the other Non-AFFF—but the district court rejected the distinction, noting that "Plaintiffs cannot decide what defense Defendants might present."  *Nessel*, 2021 U.S. Dist. LEXIS 39175, at *10.  The *Nessel* Court wrote that "while Plaintiffs attempt to surgically divide their complaints between Commercial and MilSpec AFFF, they cannot prevent Defendants from raising the production of MilSPec AFFF as a defense or an alternative theory, particularly when *Plaintiffs admit* that Defendants produced MilSpec AFF and that PFAS from AFFF spread contamination throughout the state."  *Id.*  The district court concluded that "Plaintiffs' artful pleading does not obviate the facts on the ground."  *Id.* at *10-11.

19

Against *Nessel* is *New Hampshire*.  In *New Hampshire*, the district court focused on the "specific limitations on the scope of [the] plaintiff's claims" and concluded that these limitations "eliminate a potential relationship between the plaintiff's claims and a defendant's federal acts."  2023 U.S. Dist. LEXIS 53461, at *22.  The district judge noted two other cases, where district courts honored similar disclaimers.  *Id.* at *22-24 (citing *Hayden v. 3M*, No. 15-2275, 2015 U.S. Dist. LEXIS 104534, at *3-4 (E.D. La. Aug. 10, 2015); *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1363-64 (S.D. Fla. 2016) (stating that federal courts have "consistently" granted motions to remand in cases where the plaintiff expressly disclaims recovery for claims on which federal removal is based)).  The *New Hampshire* Court distinguished *Nessel* on the ground that *Nessel* involved "two different kinds of AFFF", whereas *New Hampshire* addressed, as here, AFFF and Non-AFFF contamination.  *Id.* at *26-27 ("Here, unlike *Nessel*, whether an alternative source of contamination was MilSpec AFFF is irrelevant because this suit does not involve AFFF, regardless of whether it is MilSpec of another version of AFFF").

Finally, the district judge in *New Hampshire* did not find "the reasoning of *Nessel* persuasive."  *Id.*  The judge explained:

> If the sources of contamination <u>cannot</u> be distinguished, 3M cannot be held liable.  That is, the State will fail to establish its own case, which is premised on the existence of contamination from some non-AFFF source.  And, if a factfinder can distinguish the sources of contamination, 3M will prevail to the extent the factfinder determines contamination came from AFFF.  This is true regardless of whether 3M supplied the AFFF under federal authority or warned the government about its dangers.

*Id.* (emphasis in original).

On balance, the Court concludes that *New Hampshire* is more persuasive. In *Batchelor*, the district court observed that "Federal courts addressing disclaimer provisions in similar actions have 'recognize[d] a distinction between artful pleading for purposes of circumventing federal officer jurisdiction, and express disclaimers of the claims that serve as the ground for removal under Section 1442(a)(1).'" *Batchelor*, 185 F. Supp. 3d at 1363 (quoting *Siders v. 20th Century Glove Corp. of Texas*, No. 2:15-cv-13278, 2016 U.S. Dist. LEXIS 57210, at *25 (S.D.W.V. Apr. 29, 2016) (quoting *Dougherty v. A O Smith Corp.*, Civil Action No. 13-1972-SLR-SRF, 2014 U.S. Dist. LEXIS 96290, at *36 (D. Del. July 16, 2014)); *Kelleher v. A.W. Chesterton Co.*, No. 15-cv-893, SMY-SCW, 2015 U.S. Dist. LEXIS 159783, at *13 (S.D. Ill. Nov. 23, 2015); *Madden v. A.H. Voss Co.*, No. C 09-03786 JSW, 2009 U.S. Dist. LEXIS 24792, at *2-3 (N.D. Cal. Oct. 21, 2009). Here, the State's disclaimer is express, unambiguous, and plain, and in the Court's view, fits within the category of express disclaimers courts have found effective to justify a remand order. *Dougherty*, 2014 U.S. Dist. LEXIS 96290, at *36 (Where express disclaimers are made, "federal courts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based").

Furthermore, as Chief Judge McCafferty pointed out, by its disclaimer, the State has taken upon itself the burden as part of its case to demonstrate that the source of contamination in its Non-AFFF lawsuit is not a AFFF source. If the factfinder concludes that the State has failed to meet its burden concerning the source, 3M will prevail. This effectively means that the federal officer defense will

21

not be applicable in the State's Non-AFFF lawsuit because the State by its express disclaimer has imposed upon itself a burden to demonstrate that its claim involves Non-AFFF sources. *Kelleher*, 2015 U.S. Dist. LEXIS 159783, at *11 ("Here, however, Plaintiff's waiver has rendered any federal defenses moot").

In sum, because of the State's express disclaimer, the Court concludes that this case must be remanded to the state of Maine Superior Court since the federal officer defense is not applicable.

Finally, the Court concludes that federal enclave jurisdiction does not plausibly exist because "the doctrine of federal enclave jurisdiction generally requires that *all* pertinent events take place on a federal enclave." *Rhode Island II*, 35 F.4th at 58 (emphasis in original). 3M suggests that the Court could assume jurisdiction under federal enclave jurisdiction over one site and then "exercise supplemental jurisdiction . . . arising from other sites." *3M's Remand Opp'n* at 17. But even if Brunswick Naval Air Station and Portsmouth Naval Shipyard could fit within federal enclave jurisdiction, the State has disclaimed any AFFF claims, including those arising from a federal enclave, so the argument circles back to the State's disclaimer.

In sum, because of the State's express disclaimer, the Court concludes that this case must be remanded to the state of Maine Superior Court since the federal officer defense is not applicable.

## B.    Motion to Stay

Despite this conclusion, the Court addresses why it resolved this issue before the JPML acted on the motion for transfer and not stay resolution to give the JPML

22

an opportunity to decide for itself whether to accept this case as part of the MDL. Federal courts "possess the inherent power to stay [a case] for prudential reasons." *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004). In evaluating whether to issue a stay, a court will generally consider three factors: "(1) potential prejudice to the non-moving party, (2) hardship and inequity to the moving party without a stay, and (3) judicial economy." *Good*, 624 F. Supp. 2d at 134. "The party seeking the stay bears the burden of demonstrating that a stay is appropriate." *Maine v. Wheeler*, No. 1:14-cv-00264-JDL, 2020 U.S. Dist. LEXIS 12334, at *8-9 (D. Me. Jan. 6, 2020). Whether to stay a proceeding in anticipation of a transfer ruling from the JPML rests within a court's discretion. *City of Portland v. Pardue Pharma, LP*, No. 2:18-cv-282-NT, 1:18-cv-298-NT, 2:18-cv-310-NT; 2018 U.S. Dist. LEXIS 201070, at *16 (D. Me. Nov.18, 2018); *Good*, 624 F. Supp. 2d at 134.

Here, applying *Eastern Maine*, the Court's "preliminary assessment suggests that removal was improper," and therefore, "the court should promptly . . . remand the case to state court." *E. Maine*, 581 F. Supp. 3d at 285 (quoting *Meyers*, 143 F. Supp. 2d at 1049). "Generally, motions to remand should be resolved before the panel acts on the motion to transfer so the federal court can assure itself of jurisdiction before the case transfers to the MDL." *Nessel*, 2021 U.S. Dist. LEXIS 39175, at *6.

In addition, although the JPML analysis of whether to accept a case for MDL transfer is similar to this Court's jurisdictional inquiry, they are not the same. The JPML's MDL Transfer Order filed on December 7, 2018, stated that "[a]ll of the actions on Schedule A involve allegations that aqueous film-forming foams (AFFFs,

which are used to extinguish liquid fuel fires) contaminated the groundwater near certain airports and other industrial locations with perfluorooctane sulfonate (PFOS) and/or perfluorooctanoic acid (PFOA), which allegedly were contained in the AFFFs and are toxic." *In re Aqueous Film-Forming Foams Products Liability Litig.*, No. 2:18-mn-02873-RMG, *Transfer Order* at 1 (ECF No. 1).  The JPML concluded that "the AFFF actions listed on Schedule A involve common questions of fact, and that centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." *Id.* at 3.

When considering whether to grant a motion to transfer a case to an MDL, the standard is found in 28 U.S.C. § 1407, the statute authorizing multi-district litigation. Section 1407 provides that the JPML shall transfer a case to an MDL "upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.*, *see e.g., In re Sonic Corp. Customer Data Sec. Breach Litig.*, 276 F. Supp. 3d 1382, 1383 (JPML Dec. 6. 2017) ("On the basis of the papers filed and the hearing session held, we find that centralization under Section 1407 in the Norther District of Ohio will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation").

As described here, the jurisdictional issue before this Court does not address the § 1407 standards, but whether the Court should assume jurisdiction over the case in the first place.  Thus, even if the Court were to stay this matter to allow the JPML

24

to determine whether it is an appropriate MDL case, the jurisdiction question in this case would not be answered by the JPML.

"The district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  "The federal courts are under an independent obligation to examine their own jurisdiction . . .." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).  In reaching and resolving the jurisdictional question, this Court is acting in accordance with its independent obligation to assure that its jurisdiction over this lawsuit is proper.

Finally, as a practical matter, the Court of Appeals for the First Circuit will resolve 3M's appeal in *New Hampshire* and its resolution may well inform the proper disposition of this case, thus any potential prejudice to 3M is mitigated by the fact that it is currently before the First Circuit on a virtually identical issue and ruling.

## V.   CONCLUSION

The Court GRANTS the Plaintiff State of Maine's Motion to Remand (ECF No. 10) and DENIES Defendant 3M Company's Motion to Stay (ECF No. 31).  The Court REMANDS this case to the State of Maine Superior Court for Cumberland County.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 26th day of July, 2023

25